UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DANIEL DURAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HAMPTON CREEK,<br><br>　　　　　Defendant. | Case No. 3:15-cv-05497-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 20 |

## INTRODUCTION

This is a consumer-products mislabeling case. The product is Hampton Creek's vegan mayonnaise substitute "Just Mayo." It has a front label with the words "Just Mayo" and an image of an egg, but the product does not contain eggs. (Complaint − ECF No. 1.[1]) On behalf of himself and other consumers, the plaintiff sued Hampton Creek, claiming that its label misrepresents what the product is because "mayo" is mayonnaise, which − as commonly understood and defined by FDA regulations − is a product that contains eggs. (*Id.* ¶¶ 3, 24.) For this alleged violation, the plaintiff brings claims under three California consumer-protection statutes: deceptive advertising under Cal. Bus. & Prof. Code § 17500; deceptive practices under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-84; and unfair business practices under the Unfair

---

[1] Citations are to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

ORDER (No. 3:15-cv-05497-LB)

Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-08. (*Id.* − claims one, two, and six.) He also brings claims for common-law fraud, negligent misrepresentation, breach of express warranty, and unjust enrichment. (*Id.* − claims three, four, five, and seven.) As one remedy, he seeks an injunction under the statutes to prevent further marketing of products as "mayo" or "mayonnaise" when the products do not meet the FDA's definition of "mayonnaise." (*Id.* at 24.)

Hampton Creek moves to dismiss the complaint. (Motion − ECF No. 20.) Its main argument is that the "claims sound in fraud," and the plaintiff did not plead fraud with particularity because he did not specify what he bought or the misrepresentations that he relied on. (*Id.* at 6, 10-11.) It also argues that the plaintiff lacks standing to pursue injunctive relief because he knows now that the products do not have eggs and thus can no longer suffer adverse effects. (*Id.* at 12.) It also asserts that the plaintiff did not comply with the CLRA's 30-day statutory notice requirement. (*Id.* at 9.)

The court finds that it can decide this matter without oral argument under Civil Local Rule 7-1(b). The court denies Hampton Creek's motion to dismiss the fraud claims and holds that the plaintiff pleads fraud with sufficient particularity. The court grants the motion to dismiss the claim for injunctive relief because the plaintiff did not plead facts establishing standing but gives leave to amend (though it thinks that curing the deficiencies is unlikely). The CLRA claim seeks only injunctive relief; the dismissal is without prejudice to asserting a damages claim.

## STATEMENT

The facts in this section are from the complaint and FDA letters that the court judicially notices and also considers because the complaint incorporates them by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. County of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *White v. Social Sec. Admin.*, 111 F. Supp. 1041, 1047-48 (N.D. Cal. 2015) (judicial notice of documents on government website); *Gustavson v. Mars, Inc.*, No. 13-cv-04537-LHK, 2014 WL 2604774, at *3 n.1 (N.D. Cal. June 10, 2014) (judicial notice of FDA letters and press releases on FDA website).[2]

---

[2] The plaintiff did not oppose the defendant's request for judicial notice at ECF No. 24.

ORDER (No. 3:15-cv-05497-LB)               2

1   "The falsely labeled Products are listed and/or otherwise depicted in Attachment A" to the

2   complaint.³ Attachment A has front and back labels for four eight-ounce "Just Mayo" products:

3   Original, Chipotle, Garlic, and Sriracha.⁴ The labels are nearly identical.

4   This is a front label.



---

³ Complaint − Attachment A.
⁴ *Id.*

ORDER (No. 3:15-cv-05497-LB)         3

1  This is a back label.



The labels are on a transparent container; the sandwich spread inside is visible and is an off-white color "just like real mayonnaise."[5] The products are not mayonnaise because they do not have egg ingredients.[6] Under federal regulations and common dictionary definitions, "mayo" is "mayonnaise," and "mayonnaise" must contain eggs.[7] The relevant FDA regulation is 21 C.F.R. § 169.140, which defines "mayonnaise" as an emulsified semi-solid food made from vegetable oil, an acidifying ingredient of vinegar, lemon juice, or lime juice, and "an egg yolk-containing" ingredient.[8] The Merriam Webster Online Dictionary similarly defines mayonnaise as "a dressing made chiefly of egg yolks, vegetable oils, and vinegar or lemon juice."[9] It defines "mayo" as "mayonnaise;" "in common usage, 'mayo' often is used as a synonym for "mayonnaise."[10]

---

[5] *Id.* ¶ 28.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 24.
[8] *Id.*
[9] *Id.* (bolding and emphasis omitted).
[10] *Id.*

ORDER (No. 3:15-cv-05497-LB)           4

The complaint characterizes the front labels as "material misrepresentations and/or omissions" that give a false impression that the product is mayonnaise.[11] Hampton Creek "makes the same material and misleading statements and/or omissions on its website."[12] The complaint has screen shots of the website describing Just Mayo as "an outrageously delicious *mayonnaise*"[13] and a "creamy rich *mayo* for any sandwich, anytime."[14] The plaintiff alleges that the website descriptions show that "Hampton Creek's false labeling, and its false claims that Just Mayo is 'mayonnaise' or 'mayo,' are part of a larger scheme of false advertising."[15] (The complaint notes that Hampton Creek "recently removed the word mayonnaise from its website.")[16] Hampton Creek allegedly knew that its representations were false because it knew its product's ingredients and the FDA regulations.[17] In August 2015, the FDA sent Hampton Creek a warning letter that the "misleading name and imagery" on the label "rendered the products misbranded" under the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343 *et seq.*, and the implementing regulations at 21 C.F.R. § 101.[18] In December 2015, the FDA sent a close-out letter stating that it had completed its "evaluation of Hampton Creek's corrective actions in response to our Warning Letter," and "[b]ased on that evaluation, we conclude that you [Hampton Creek] satisfactorily addressed the violation[s] in the Warning Letter."[19]

Daniel Duran "purchased and/or consumed one or more unit[s] of Just Mayo" during the class period.[20] Before he bought Just Mayo, he "was exposed to and saw Defendant's claims," and bought the product in reliance on them.[21] If he had known that the product was not mayonnaise, he would not have purchased it and instead would have bought true mayonnaise or nothing at all.[22]

---

[11] *Id.* ¶ 6.
[12] *Id.*
[13] *Id.* ¶ 33 (emphasis added).
[14] *Id.* ¶ 34 (emphasis added).
[15] *Id.* ¶ 35.
[16] *Id.* ¶ 33.
[17] *Id.* ¶¶ 24, 36-39.
[18] *Id.* ¶ 39 (citing www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm458824.htm).
[19] ECF 21-3.
[20] Complaint ¶ 12.
[21] *Id.* ¶ 12.
[22] *Id.* ¶ 13.

United States District Court
Northern District of California

**GOVERNING LAW**

The defendant primarily challenges the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim by not pleading fraud with particularity under Rule 9(b). It also challenges the plaintiff's standing under Article III to pursue injunctive relief; the court evaluates standing challenges under Rule 12(b)(1).

**1. Failure to state a claim and allege fraud with particularity**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When fraud—or a claim sounding in fraud—is alleged, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

1  "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The
2  plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*
3  (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on
4  other grounds)). Rule 9(b)'s heightened pleading requirement serves three purposes: "[1]] to
5  provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs
6  from the filing of complaints as a pretext for the discovery of unknown wrongs; [2]] to protect
7  those whose reputation would be harmed as a result of being subject to fraud charges; and [3]] to
8  prohibit plaintiffs from unilaterally imposing upon the court, the parties[,] and society enormous
9  social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (citations and
10 internal quotations and alterations omitted)).

**2. Rule 12(b)(1)**

A complaint must contain a short and plain statement of the ground for the court's jurisdiction (unless the court already has jurisdiction and the claim needs no new jurisdictional support). Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack; the court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**3. Leave to amend**

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

United States District Court
Northern District of California

## ANALYSIS

**1. Fraud Allegations**

Hampton Creek's main challenge to the complaint is that the "claims sound in fraud," and the plaintiff did not plead fraud with particularity. It contends that the plaintiff should have alleged "what specific Product he bought, when and where he bought it, how much he paid, what size and flavor he purchased, whether he liked the Product and whether he continues to purchase it, and what specific representations he may have seen and/or relied on."[23] More concisely, Hampton Creek asserts that it is "unclear if he purchased any Products," and in any event, there are "no specific allegations about what Plaintiff himself saw or relied on in making his decision to purchase and/or consume a Product."[24] Hampton Creek also says that the labels for 16-ounce and 30-ounce sizes always have "prominently" said "Egg-Free" on the front labels.[25]

The court thinks that the plaintiff sufficiently alleged that he bought a product listed in Attachment A, which limits the product universe to four eight-ounce Just Mayo products: Original, Chipotle, Garlic, and Sriracha.[26] Read in the context of that limitation, he said that "prior to purchasing" the product (necessarily one of the four), he "was exposed to and saw Defendant's claims" (meaning, on the front label) and bought the product in reliance on them.[27] Put more colloquially, he claims that he saw the front label and then bought the product. He also said that if he had known the product was not mayonnaise, he would not have purchased it and instead would have bought true mayonnaise or nothing at all.[28]

These allegations are like those that the court found sufficient in *Ham v. Hain Celestial Group, Inc.*, a food-label case involving an "All Natural" claim about waffles that actually contained a synthetic ingredient. 70 F. Supp. 3d 1188, 1192-92 (N.D. Cal. 2014). The plaintiff in *Ham* raised similar claims for violations of the same California consumer-protection statutes (deceptive advertising under Cal. Bus. & Prof. § 17500, deceptive practices under the CLRA, and unfair

---

[23] Motion − ECF No. 20 at 7.
[24] *Id.* at 10.
[25] *Id.* at 10-11.
[26] Complaint − Attachment A.
[27] *Id.* ¶ 12.
[28] *Id.* ¶ 13.

ORDER (No. 3:15-cv-05497-LB)    8

business practices under the UCL) and claims for fraud and negligent misrepresentation, all of which require a showing under California law of fraud or misrepresentation. *Id.* at 1193. The court held that the plaintiff satisfied Rule 9(b)'s requirement for pleading fraud with particularity because she identified "(i) the who: Hain; (ii) the what: "All Natural" labeling on waffles containing SAPP, a synthetic ingredient; (iii) the when: purchases made between May 2012 and March 2014; (iv) the where: labels on the waffles, copies of which [were] attached to the complaint; (v) and the how: purchases made with reasonable reliance on the "All Natural" statement." *Id.* at 1194-95. The complaint also identified the products—those involving the same "All Natural" misrepresentation—such that Hain could "easily determine which products [were] at issue." *Id.* at 1195; *cf. Thomas v. Costco Wholesale Corp.*, No. 5:12-cv-02908-EJD, 2013 WL 1435292, at *6-7 (N.D. Cal. April 9, 2013) (Rule 9(b) not satisfied where the products and misrepresentations are ambiguously defined). Thus, the complaint was sufficiently particular that Hain could "defend against the charge [of fraud] and not just deny that they . . . [did] anything wrong." *Id.* at 1192, 1195; *see also Garrison v. Whole Foods Market Group, Inc.*, No. 13-cv-05222-VC, 2014 WL 2451290, at *3 (N.D. Cal. June 2, 2014).

Here, as in *Ham*, the complaint identifies the products and alleged misrepresentations sufficiently to put Hampton Creek on notice of its alleged wrongdoing. First, it states the specific misrepresentation that appears on four eight-ounce vegan mayonnaise substitutes: the words "Just Mayo" and a "large image of an egg."[29] The four labels (attached to the complaint) are "nearly identical."[30] Second, the complaint alleges why the representation "Just Mayo" is false: "mayo" means "mayonnaise," and under FDA regulations, common understanding, and dictionary definitions, mayonnaise contains eggs.[31] And Just Mayo does not contain eggs, as the back label shows.[32] "By calling its sandwich spread 'Just Mayo,' Hampton Creek falsely communicates to consumers, including Plaintiff, that Just Mayo is mayonnaise, when, in fact, it is not."[33] Third, the

---

[29] *Id.* ¶¶ 4-5, 28-30.
[30] *Id.* ¶ 30 & Attachment A.
[31] *Id.* ¶¶ 3-4, 28-31.
[32] *Id.* ¶¶ 3, 24-27.
[33] *Id.* ¶ 4.

ORDER (No. 3:15-cv-05497-LB)   9

complaint alleges that the named plaintiff and other consumers saw the labels and relied on them. They "were exposed to the material representations and/or omissions . . . prominently displayed on [Just Mayo's] packaging, prior to purchasing it."[34] They "would not have purchased Just Mayo, or would have paid less for [it,]" had they known it was not mayonnaise.[35] Finally, the complaint establishes the class period for purchases: "on or after December 1, 2011."[36] In sum, Mr. Duran identifies: 1) the who: Hampton Creek; 2) the what: "Just Mayo" and an image of an egg on the front label of eight-ounce containers of Just Mayo Original, Chipotle, Garlic, and Sriracha; 3) the when: purchases made during the class period; 4) the where: the front labels (the "packaging") on the four products; and 5) the how: purchases made while reasonably believing that "Just Mayo" means "mayonnaise," which commonly includes eggs.

The sufficiency of the complaint's allegations is supported by the analysis in *Romero v. Flowers Bakeries, LLC*, where the court held that the plaintiff failed to plead fraud with particularity. No. 14-cv-05189-BLF, 2015 WL 2125004 (N.D. Cal. May 6, 2015). There, the plaintiff sued the defendant for fraudulently mislabeling its "Nature's Own" bread products. *Id.* at *1. The plaintiff set forth three separate classes of mislabeled products, each with different alleged misrepresentations. *Id.* at *3. The plaintiff's allegations about these three classes amounted to "generalized assertions of exemplary misrepresentations across a range of products." *Id.* at *4. Moreover, because of the broad and generalized allegations, the plaintiff could not establish how she relied on the representations or what she actually believed them to mean. *Id.* The court therefore could not determine "what specific representations she perceived on each purchased product, what she interpreted those representations to mean, and how those representations were false." *Id.* As a result, the allegations were insufficient "to place [the defendant] on notice of the misconduct charged" and insufficient to satisfy Rule 9(b). *Id.; see also Thomas*, 2013 WL 1435292 at * 6-7 (Rule 9(b) not satisfied where the subject products and misrepresentations are ambiguously defined).

---

[34] *Id.* ¶¶ 6, 41, 44.
[35] *Id.* ¶¶ 6-7, 13, 43-46.
[36] *Id.* ¶ 19.

By contrast, the product universe here is confined to the four labels for the four eight-ounce products in Attachment A, and Mr. Duran alleges sufficiently that he saw the misrepresentations on the front label, bought the product based on the misrepresentation that the product was mayonnaise, and would not have bought if he had known that it was a vegan substitute. In sum, Mr. Duran has sufficiently identified the four products at issue and the alleged misrepresentation so that Hampton Creek may defend the charge.

Hampton Creek also observes that the complaint does not say whether Mr. Duran saw the statements on the website (that "Just Mayo is an outrageously delicious mayonnaise" and is a "[c]reamy rich mayo for any sandwich, anytime") or whether he relied on them.[37] Hampton Creek is right, but this does not alter the analysis. Reading the complaint as a whole, it does not reference the website advertisements to show that Mr. Duran relied on them. Instead, it cites them as proof of Hampton Creek's knowledge and intent: the false claims on the website "are part of a larger scheme of false advertising."[38] *Cf. Ham*, 70 F. Supp. 3d at 1197 ("A party does not have standing to challenge statements or advertisements that she never saw."); *Lanovaz v. Twinings North America, Inc.*, No. C-12-02646-RMW, 2014 WL 46822, at *6 (N.D. Cal. Jan. 6, 2014) (the plaintiff "cannot base a claim on content on Twinings' website that she never saw or relied on.") It then bolsters that *scienter* evidence with the FDA warning letter to show that Hampton Creek knew that its representations were false.[39]

In sum, the complaint alleges fraud with sufficient particularity for the four eight-ounce Just Mayo products listed in Attachment A.[40] The court denies the motion to dismiss the claims.[41]

---

[37] Motion − ECF No. 20 at 11; *see* Complaint, ¶¶ 33-34.
[38] Complaint ¶¶ 33-35.
[39] *Id.* ¶¶ 24, 36-39.
[40] The four products and the alleged misrepresentations are nearly identical; Hampton Creek does not argue otherwise. *See, e.g.*, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012) (standing extends to products not purchased when the products and the alleged misrepresentations are substantially similar).
[41] The court considers *Neal v. NaturalCare, Inc.*, EDCV 12-00531 DOC, ECF No. 33 (C.D. Cal. Dec. 20, 2012). *See* Request for Judicial Notice, ECF No. 24 (attaching *Neal*). The request is unopposed, and the court can consider the order without taking judicial notice of it. *See* Fed. R. Evid. 201 advisory comm. n. (1972); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) (both citing the advisory committee note).

### 2. Standing for injunctive relief

Among other remedies, the plaintiff seeks injunctive relief for violations of three California consumer-protection statutes—deceptive advertising under Cal. Bus. & Prof. § 17500; deceptive practices under the CLRA; and unfair business practices under the UCL)—to prevent further marketing of products as "mayo" or "mayonnaise" when the products do not meet the FDA's definition of "mayonnaise."[42] Hampton Creek contends that the plaintiff lacks standing to pursue injunctive relief because he knows now that the products do not have eggs and thus he can no longer suffer adverse effects.[43]

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the earth, Inc. v. Laidlaw Envtly. Sys. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To establish standing for injunctive relief in federal court, a plaintiff "must demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" *Machlan v. Procter & Gamble Company*, 77 F. Supp. 3d 954, 959-960 (N.D. Cal. 2015) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

The issue here is whether Mr. Duran, as the putative class representative, has standing to seek an injunction despite his knowledge that Just Mayo is not "mayonnaise."

The Ninth Circuit has not addressed the issue, and district courts have taken divergent approaches. On one hand, some courts have found that a plaintiff does not have standing for injunctive relief when the plaintiff is aware of the representation's misleading nature. *See, e.g.*, *Romero*, 2015 WL 2125004, at *7; *Anderson v. The Hain Celestial Group, Inc.*, 87 F. Supp. 3d 1226, 1233-35 (N.D. Cal. 2015); *Ham*, 70 F. Supp. 3d at 1196; *Garrison*, 2014 WL 2451290 at *5. These courts reason that plaintiffs "who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future." *Ham*, 70 F.

---

[42] Complaint − claims one, two, and six and "Relief Sought."
[43] Motion − ECF No. 20 at 7, 12.

ORDER (No. 3:15-cv-05497-LB)           12

Supp. 3d at 1196. Even if the plaintiff intended to purchase the product in the future, "the nature of [the] alleged injury, *i.e.*, deception, is such that [the plaintiff] personally cannot be harmed in the same way again." *Machlan*, 77 F. Supp. 3d at 960. While recognizing the "important state interest underlying California's consumer protection statutes," these courts note the limiting nature of Article III standing, which "does not expand to accommodate the policy objectives underlying state law." *Anderson*, 87 F. Supp. 3d at 1234; *Garrison*, 2014 WL 2451290 at *5 (internal citations omitted). Instead, these courts hold, plaintiffs may seek injunctive relief in California state court, where the courts are not bound by the requirements of Article III. *Anderson*, 87 F. Supp. 3d at 1235.

On the other hand, some courts allow plaintiffs to seek injunctive relief even when aware of the misrepresentation. *See, e.g.*, *Lanovaz v. Twinings North America, Inc.*, No. C-12-02646-RMW, 2014 WL 46822, at *9-10 (N.D. Cal. Jan. 6, 2014) (collecting cases); *Koehler v. Litehouse, Inc.*, No. CV 12--4055 SI, 2012 WL 7290487, at *6-7 (N.D. Cal. Dec. 13, 2012); *Larsen v. Trader Joe's Co.*, No. C 11-5188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012); *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012). These courts reason that to hold otherwise would construe Article III standing so narrowly as to preclude federal courts "from enjoining false advertising under California consumer laws[,]" "eviscerate[ing] the intent of the California legislature." *Larsen*, 2012 WL 5458396 at *4 (quoting *Henderson v. Gruma Corp.*, 2011 WL 992194, at *7 (S.D. Cal. 2011)). Moreover, some courts have focused on the particular nature of the injury at issue to find standing. They have found at least two injuries sufficient to establish standing where the plaintiff is aware of the misrepresentation: absent an injunction, the plaintiff-consumer will 1) no longer be able to confidently rely on the defendant's representations (*see Ries*, 287 F.R.D. at 533), and 2) refrain from purchasing products in the future even if they in fact conform to her expectations (*see Lilly v. Jamba Juice Company*, No. 13-cv-02998-JST, 2015 WL 1248027, at *3-5 (N.D. Cal. March 18, 2015). Even where courts find standing, most require that the plaintiff plead intent to purchase the products in the future to establish a sufficient threat of future injury. *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 970 (2014) ("Where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have

ORDER (No. 3:15-cv-05497-LB)                13

1  held that the plaintiff has no standing to seek prospective injunctive relief."); *Rahman v. Mott's*

2  *LLP*, No. CV 13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (rejecting the

3  argument that plaintiff lacked standing because he was aware of the misrepresentation but finding

4  that the "plaintiff must allege that he intends to purchase the products at issue in the future"); *see*

5  *also Lilly*, 2015 WL 1248027, at *5 (a willingness to consider a future purchase is sufficient).

6      On this record and briefing, the court is not persuaded that injunctive relief is never available

7  for a consumer who learns after purchasing a product that the label is false. One can discern the

8  plausibility of repeated harm to a consumer who relies on labels to make choices and who might

9  buy a product if it conformed to the representations on the label. *See Lilly*, 2015 WL 1248027, at

10  *3-5. Without injunctive relief, that consumer is harmed, probably because she won't buy it

11  because she will suspect a continuing misrepresentation (even if the manufacturer conforms the

12  product to the label). *Id.* Thus, with an "all natural" claim (like that in *Lilly*) or something similar

13  (such as an "organic" claim), a plaintiff plausibly is injured in the future and has standing to seek

14  injunctive relief in the form of a label change. *Id.*

15      But this possibility does not exist here. The claim is "mayonnaise," and the product is a vegan

16  substitute. There is no possibility of confusion to Mr. Duran as a consumer. He knows what the

17  product is and will remain: a vegan spread. He disavowed interest in any product that is not

18  mayonnaise: he would not have purchased the product if he had known it was not mayonnaise and

19  instead would have purchased true mayonnaise or nothing at all.[44] The scenario of a customer who

20  might buy a product that is "all natural" or "organic" does not exist here. Given the allegations in

21  this complaint, Mr. Duran will not be deceived again and thus does not have standing to pursue

22  injunctive relief in the form of a label change. The court dismisses the claims under the three

23  California consumer-protection statutes to the extent that the remedy is injunctive relief.

24      The question is whether the dismissal is with or without prejudice. The court cannot see how

25  Mr. Duran can allege standing to pursue injunctive relief. That said, given the permissive standard

26  for giving leave to amend and the court's view that the second line of cases (embodied in the *Lilly*

27

28  [44] Complaint ¶ 13.

United States District Court
Northern District of California

decision) is the most persuasive, the court gives leave to amend.

### 3. Duran's CLRA claim

Hampton Creek moves to dismiss Mr. Duran's CLRA claim for damages because he did not comply with that statute's notice requirements.[45] The plaintiff responds that the complaint seeks only injunctive relief under the CLRA, the notice letter notified Hampton Creek of the alleged violations, and the complaint specified that "[i]f, after 30 days from the date of the notification letter, Hampton Creek has failed to provide appropriate relief for the violations," the plaintiff would amend the complaint to seek damages under the CLRA.[46]

Because the CLRA claim (as the plaintiff pleads it now) is limited to injunctive relief, the court's dismissal of the injunctive relief claim for lack of standing means that the court dismisses the CLRA claim. The dismissal is without prejudice to asserting a CLRA claim for damages.

## CONCLUSION

The court grants in part and denies in part Hampton Creek's motion to dismiss. The court denies the motion to dismiss the claims for failure to plead fraud with particularity. The court grants the motion to dismiss the claims to the extent that they seek injunctive relief and gives leave to amend within 21 days from the date of this order. This disposes of ECF Nos. 20, 21, and 24.

**IT IS SO ORDERED.**

Dated: March 28, 2016

LAUREL BEELER
United States Magistrate Judge

---

[45] Motion − ECF No. 20 at 13. The court takes judicial notice of the plaintiff's letter at ECF 21-1 at 2. The request is unopposed, and the parties do not dispute its authenticity. Fed. R. Evid. 201(b); Fed. R. Evid. 201(a) & (b) advisory comm. n.

[46] Complaint ¶¶ 81, 83; Opposition − ECF No. 23 at 9.